UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **BRIAN RICHARD ROCKETT** | * | **CIVIL ACTION NO. 11-2132** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

**Background & Procedural History**

Brian Rockett protectively filed the instant application for Title II Disability Insurance Benefits on March 6, 2009. (Tr. 27, 144-145). He alleged disability as of December 1, 2005, because of a low back problem, leg trouble, high blood pressure, a prostate problem, a kidney stone, and arthritis. (Tr. 152, 156). The state agency denied the claim at the initial stage of the administrative process. (Tr. 73-78). Thereafter, Rockett requested and received a September 30, 2009, hearing before an Administrative Law Judge ("ALJ"). (Tr. 40-72). However, in a March 16, 2010, written decision, the ALJ determined that Rockett was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that he was able to return to his past relevant work as a saw filer. (Tr. 24-35). Rockett appealed the adverse decision to the

Appeals Council. On October 21, 2011, however, the Appeals Council denied Rockett's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).[1]

On December 12, 2011, Rockett filed the instant complaint for review before this court. He alleges the following errors,

1) The ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Shaw, without assigning good cause or discussing the factors set forth in 20 C.F.R. § 404.1527(d)(2); and

2) The ALJ failed to comply with Social Security Ruling 83-20 regarding determinations of disability onset.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court

---

[1] This latest decision by the Appeals Council superceded an earlier, July 29, 2011, denial, that was rendered prematurely without the benefit of post-ALJ decision evidence submitted by counsel for the claimant. *See* Tr. 7-11.

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

   (1)   An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

   (2)   An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

   (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

>   (4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
>   (5)  If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The court observes that Rockett remained insured for purposes of his Title II claim only through March 31, 2008. *See* Tr. 27. Thus, the relevant period extends from December 1, 2005, – his alleged disability onset date, through March 31, 2008, – the date that he was last insured. Evidence outside of this interval may be considered only to the extent it has a bearing on the relevant period.

### I.   Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Rockett did not engage in substantial gainful activity during the relevant period. (Tr. 29). At step two, he found that he suffered from severe impairments of obesity; hypertension; chronic ischemic heart disease

without angina; lower extremity edema; and degenerative disc disease. *Id.*[2] He concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 33).

## II.     Residual Functional Capacity

The ALJ next determined that, for the relevant period, Rockett retained the residual functional capacity ("RFC") to perform light work, except that he could stand/walk for no more than two hours in an eight hour day, sit for six hours, with the ability to occasionally balance, stoop, kneel, crouch, crawl, and climb. (Tr. 16).[3]

The court notes that plaintiff has a long history of back pain. By his own report, his back pain began in 1974. (Tr. 556). Plaintiff's lengthy treatment record reflects diagnostic testing and treatment efforts that extend at least as far back as 2001-2002. *See e.g.*, Tr. 425-428, 509-511.

---

[2] The ALJ determined that plaintiff's alleged mental impairment was non-severe. (Tr. 32-33). Plaintiff does not contest this determination on appeal. However, to the extent that plaintiff is inclined to pursue this issue upon remand, *see* discussion, *infra*, then he should ensure that his alleged mental impairment is properly developed and/or assessed by an "acceptable" mental health source.

[3] Light work contemplates:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Furthermore, over the years, plaintiff has undergone numerous examinations, consultations, and modalities, with assorted physicians and specialities.  Although plaintiff experienced high blood pressure, and renal-related problems during the relevant period, he persisted at the hearing before the ALJ that it was his back pain that kept him from working.  *See* Tr. 48.

With regard to plaintiff's back or lumbar pain, the court observes that on August 18, 2004, prior to the relevant period, Rockett underwent a consultation with Randall Brewer, M.D. (Tr. 285-288).  Brewer diagnosed chronic radicular low back pain, and sacroiliitis, discogenic, with an anatomic diagnosis of mild degenerative disc disease at L4-5.  *Id*.  He further noted that Rockett was at moderate risk of drug-seeking behavior at that time.  *Id*.  Rockett had an elevated SOAP score, a poor anatomic correlation with pain distribution, and preoccupation with medication acquisition.  *Id*.

On October 31, 2005, Rockett presented to Richard Ballard, M.D., who noted his long history of low back pain that began when he was a teenager.  (Tr. 298).  Ballard noted that Rockett had been to a physical therapist, a chiropractor, a massage therapist, an acupunturist, and had undergone cortisone shots, as well as multiple injections.  *Id*.  His medications included Hydrocodone, Mepergan, Lotrel, Anaprox, Elavil, Soma, and Allopurinol.  *Id*.  Ballard diagnosed Rockett with failed back syndrome.  *Id*.  Although Ballard provided Rockett with some analgesics, he advised him that he would have to decrease their use.  *Id*.[4]

On November 11, 2005, shortly before the alleged disability onset date, Rockett again saw Dr. Ballard with complaints of tremendous pain, but had an essentially unremarkable work-

---

[4]  An October 31, 2005, x-ray of the lumbar spine showed normal alignment of the vertebral bodies.  (Tr. 321).  There was no loss of vertebral body height or disc space narrowing.  *Id*.  The radiologist diagnosed unremarkable lumbar spine and mild degenerative changes of the inferior aspect of the sacroiliac joint.  *Id*.

up. (Tr. 297). Ballard noted that Rockett had been to the pain institute, and was consuming a tremendous amount of analgesics. *Id*. Ballard tried to explain to Rockett that he could not keep this going. *Id*. He believed that Rockett would just have to try and live with the situation. *Id*. Nonetheless, Ballard made arrangements to obtain a bone scan and repeat lumbar MRI. *Id*.[5]

Perhaps the physician with the greatest longitudinal insight into plaintiff's impairments, and their effects, is his primary care physician, Mark Shaw, M.D. As of 2009, Shaw had treated Rockett for approximately ten years. *See* Tr. 257. Moreover, Rockett saw Dr. Shaw or his nurse practitioner over 20 times in 2006 and 2007. *See* Tr. 233-253. Most of the visits stemmed from respiratory distress or because of swelling in the lower extremities that apparently was caused by fluid retention. *Id*. During this period, Shaw's records remained comparatively devoid of treatment for, or complaints of, back pain. In fact, according to plaintiff's prescription records, during the relevant period, he only sporadically received prescriptions for stronger pain medication such as hydrocodone or methadone. (Tr. 198-205). The same records reflect that plaintiff did not begin to receive stronger pain medication on a regular basis until April 2008. *Id*.

On April 1, 2008, – one day after he was last insured for benefits – Rockett returned to Dr. Shaw's office because he wanted some blood work done. (Tr. 498). The associated progress note, however, omits any reference to complaints of back pain. *Id*. It was not until April 28, 2008, that Rockett complained to Shaw that his backache was much worse. (Tr. 497). He requested a referral to neurosurgery. *Id*. Shaw noted that Rockett's depression had worsened over the last four or five days. *Id*. Shaw commented that Rockett had been doing well for quite awhile; thus he believed something must have exacerbated his pain. *Id*. Shaw was going to set

---

[5] There is no indication that plaintiff returned to Dr. Ballard.

7

up an MRI with neurosurgery.  *Id*.[6]  He also wrote a script for Oxcontinin.  *Id*.

In a September 28, 2009, letter to plaintiff's counsel, Dr. Shaw documented that Rockett had been a patient of his for nearly ten years.  (Tr. 527).  He noted that Rockett had presented with unrelenting back and leg pain, that ultimately culminated in a back fusion on July 23, 2009.  *Id*.  In November-December 2001, Rockett received lumbar facet injections, followed by physical therapy.  *Id*.  In March 2002, he tried epidural steroid injections.  *Id*.  Shaw commented that Rockett was in poor physical health, and had been for a number of years.  *Id*.  He indicated that Rockett needed to alternate sitting, standing, and walking every 15 minutes.  *Id*.  Shaw explained that these functional restrictions were evident long before March 2008.  *Id*.  He opined that if Rockett even attempted to work full time, he would need periodic rest periods throughout the day so he could lie down or recline.  *Id*.

The ALJ declined to assign controlling weight to the opinion of plaintiff's treating physician, Dr. Shaw.  (Tr. 31).  In so doing, he found that Shaw's sit/stand limitation was inconsistent with the medical evaluations and testing of record prior to the date that plaintiff was last insured.  (Tr. 31).  Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."  20 C.F.R. § 404.1527(d)(2).  "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'"  *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted).  However, an ALJ cannot reject a medical opinion without an explanation supported by good cause.  *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

---

[6] A May 22, 2008, MRI of the lumbar spine ended up being normal.  (Tr. 521).

Assuming, for purposes of discussion, that the ALJ proffered a valid rationale for discounting Shaw's opinion, the court nevertheless observes that the remaining record does not contain substantial evidence to support the ALJ's RFC for the relevant period. Indeed, Dr. Shaw was the sole medical professional to have attempted to assess the limitations imposed by plaintiff's physical impairments.

In lieu of Shaw's opinion, the ALJ purported to ground his RFC upon the May 13, 2009, findings of a non-examining state agency physician. (Tr. 34, 73, 361-368). However, the support provided by this source proves ephemeral. It is manifest that the state agency assessment was completed by a disability *examiner*, not a state agency medical consultant. *Id*. Moreover, a disability examiner is not a medical doctor, and her opinion is not considered an acceptable medical source statement or afforded the same weight as an opinion by a medical or psychological consultant of the state agency. *See* 20 C.F.R. 404.1527(f), 416.927(f); 404.1513(d)(3) and 416.912(d)(3).

The absence of a valid medical source statement describing the remaining functional abilities of the claimant does not, in, and of itself, render the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). In *Ripley*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley, supra*. The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles. *Id*. However, without reports from qualified medical experts, the Fifth Circuit could not conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to

support the ALJ's residual functional capacity assessment. *Id*.

The instant case is materially indistinguishable from *Ripley, supra*. The record is devoid of a medical source statement that supports an RFC as adopted by the ALJ. Moreover, plaintiff's own testimony was not consistent with the ALJ's RFC for a reduced range of light work. *See* Tr. 53. Under these circumstances, the court is constrained to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

**III.     Step Four and Remand**

Because the foundation for the ALJ's step four (and alternative step five)[7] determination was premised upon a residual functional capacity that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff was not disabled as of the date that he was last insured, also is not supported by substantial evidence.

**Conclusion**

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and

---

[7] The ALJ noted that the vocational expert identified two representative jobs that plaintiff could perform given the RFC ultimately adopted by the ALJ. (Tr. 35).

**REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.[8]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 5th day of December 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[8] The court need not address plaintiff's remaining assignments of error, which, in any event, are derivations of the rationale for remand, herein.